BELLE LE TARTE et al., Claimants, *v.* STATE OF NEW YORK, Defendant.   (Claim No. 31372.)

Court of Claims, July 7, 1954.

*Nathaniel L. Goldstein, Attorney-General (David Marcus* of counsel), for defendant.

SYLVESTER, J.   On August 10, 1951, at or about 8:30 P.M., claimant Belle Le Tarte was seriously injured.  Shortly prior thereto she had been driven in a car operated by her son to a

point on the road opposite a drugstore in Ossining, N. Y., where she went to make a purchase. It was when she was leaving the store to make her way back across the road to the parked car that, as she maintains, her shoe got caught in a hole on the sidewalk in front of the drugstore, near the curbing, causing her to fall into the roadway. That there was a hole or depression located on the sidewalk adjacent to the curb in front of the drugstore, is not disputed. Its dimensions are established as having been approximately five by eight inches in length and width and varying from one to one and three-fourths inches in depth.

Some years before, the State had maintained a metal post road-marker sign which had been erected at this location. In December, 1947, however, the sign was removed and placed elsewhere to the east, leaving a hole which, it is claimed, was not filled or repaired properly and which it is said caused Mrs. Le Tarte to stumble and fall. She remembers that her heel dropped into the hole while the fore part of her foot was on the curb. This description, it is contended, corroborates claimant's version of the site of the accident because '' the only place whereat a hole existed into which a woman's heel could descend and the fore part of the foot be elevated was in front of the drug store ''.

Mrs. Le Tarte's daughter, Mrs. Brown, who was waiting in the car on the other side of the road, said she saw her mother stumble in front of the drugstore entrance. Claimant's son, who was also in the car at the time, said he saw his mother lying in front of the east show window of the drugstore. Thus, the mother and her two children place the occurrence in front of the drugstore, a claim vigorously disputed by the State which places the occurrence some fifteen to twenty-five feet east of the claimed location and in front of premises described as '' Sears Market ''.

The testimony as to where claimant fell is elicited only from the claimant, her son and her daughter. Their narratives of the event, however, are not reassuring and do not accord with the probabilities as they bear on the material issue of where claimant fell. Having fallen at the curb in front of the drugstore, from which store a stool was later brought for her to sit on, it does not satisfactorily appear why she should be carried a distance of fifteen to twenty-five feet, as variously estimated by the witnesses, to a point in front of Sears Market, particularly, since the testimony is to the effect that she suffered severe

pain when she was lifted and moved. Having been brought within a foot or two of the sidewalk in front of the drugstore, it is difficult in the circumstances to understand why she should have been carried at least fifteen feet further than necessary, an undertaking that, concededly, would have been excruciatingly painful to her. The tendered explanation is unsatisfactory. The State, on the other hand, suggests that Mrs. Le Tarte fell in front of Sears' Market where the sidewalk was also irregular and where the slope approximated two inches toward the curbing. It argues that since she was located in front of Sears' Market after the fall, some fifteen feet or more from the hole in front of the drugstore, and since she remembers only that she was lifted from the street to the sidewalk and does not recall being carried in an easterly direction along the curbing or the sidewalk, that she actually fell in front of Sears' Market. If, as claimant contends, she had fallen in front of the drugstore, it would seem likely that the attention of persons then in the drugstore would have been attracted to the claimant. The evidence is that she was screaming with pain; that, since the double doors of the drugstore were kept open, the screaming would readily have been heard and drawn attention; that the witness Lambert, who operated the soda fountain and who was close to the shop window, could have seen the claimant and heard her screams. With people walking in and out of the drugstore at the time, it is strange indeed that the alleged episode went unnoticed in the drugstore until a later time when someone called for a stool and again for a glass of water and when, still later, Lambert and Ertelli, the drugstore proprietor, administered spirits of ammonia to the claimant in front of Sears' Market.

In these circumstances, it is felt that claimant has failed to establish to the satisfaction of the court by a fair preponderance of the credible evidence that she was caused to fall by reason of the hole or depression in front of the drugstore.

Quite apart from the foregoing, however, and dealing now with the obligation of the State to repair the hole, it appears from the more reliable testimony that the State had accomplished the repair and filled in the hole. Pettit, an employee of the Department of Public Works, testified that he removed the sign which had been located in front of the drugstore and placed it about fifty feet to the east; that he patched the hole left by the removal of the sign with gravel, sand, and a wet concrete mix. This he did at nine o'clock in the morning, plac-

ing a milk box over the patch and returning at three o'clock in the afternoon of the same day to remove the box, at which time the patch was sufficiently hard to be walked upon.   Upon the evidence it cannot be said that the work of filling in the hole was not properly or adequately performed.   It is to be remembered that the signpost was removed by the State in December, 1947, and that the accident occurred in August, 1951.   The very fact that the repair was accomplished on this much traversed street more than three and one-half years prior to the accident, with no intervening mishap so far as the record shows, may well be regarded as a circumstance corroborative of the Department of Public Works employee that he properly patched the hole.   Moreover, we may not overlook the fact that, though the State was under a duty to initially repair the hole, the site was under the general care and maintenance of the Village of Ossining and not the State, an obligation of the village that continued for more than three and one-half years subsequent to the patching of the hole by the State and prior to the date of the accident (cf. *Tri-Boro Bowling Center* v. *Roosevelt Eighty-fifth Estates,* 77 N. Y. S. 2d 74, 75; *Cullings* v. *Goetz,* 256 N. Y. 287, and *Pharm* v. *Lituchy,* 283 N. Y. 130, 132).   In any event, unless it can be said that the State failed in its duty to properly repair the area which was disturbed by its removal of the post and permitted it to remain in a condition dangerous to pedestrians, a conclusion which the evidence does not warrant, no liability would be attributable to the State.   Judgment is accordingly directed dismissing the claim.   The foregoing constitutes the written and signed decision of the court (Civ. Prac. Act, § 440).